UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————X
IN RE R&G FINANCIAL CORPORATION :
SECURITIES LITIGATION            :     **ECF CASE**
———————————————————————X
This Document relates to:        :     MASTER FILE NO.
All Actions.                     :     05 Civ. 4186 (JES)
———————————————————————X

### LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR APPROVAL OF DISTRIBUTION PLAN

Lead Plaintiffs, City of Philadelphia Board of Pensions and Retirement and General Retirement System of the City of Detroit, on behalf of the Class, respectfully submit this memorandum of law in support of their motion for an Order, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure that would, among other things, approve the administrative determinations of the Claims Administrator, Heffler, Radetich & Saitta L.L.P. ("HR&S"), with respect to the claims submitted in connection the settlements of this consolidated securities class action (the "Action"), and authorize the distribution of the Net Settlement Fund to claimants whose claims have been accepted as valid and approved by the Court.[1] Specifically, the Order would, *inter alia*:

(i) approve the administrative determinations of HR&S accepting and rejecting the claims submitted in this Action;

(ii) direct the distribution of 100% of the available balance of the Net Settlement Fund, after deducting the payments previously allowed and requested herein, and after payment of any estimated taxes and the costs of preparing appropriate final tax returns and any escrow fees, to

---

[1] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Stipulation and Agreement of Settlement dated May 21, 2008 (Dkt. No. 116-2) (the "Stipulation").

the Authorized Claimants who would receive a *pro rata* distribution, as set forth in the Court-approved Plan of Allocation, of at least $10.00 (the "Distribution");

(iii)   authorize and direct a re-distribution of any funds remaining in the Net Settlement Fund one year after the Distribution by reason of uncashed distributions or other reasons to Authorized Claimants who have cashed their Distribution checks and who would receive at least $10.00 from such redistribution, and direct that any residual funds remaining in the Net Settlement Fund six months after such redistribution be donated to non-sectarian, not-for-profit, 501(c)(3) organization(s) designated by Lead Counsel;

(iv)   release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Proofs of Claim submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, from any and all claims arising out of such involvement, and bar all Class Members, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Lead Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund beyond the amount allocated to Authorized Claimants; and

(v)   approve HR&S's fees and expenses incurred and to be incurred in connection with the administration of the settlements and direct payment of $172,920.02 out of the Settlement Fund to HR&S for the unpaid balance of such fees and expenses.

## BACKGROUND

On May 21, 2008, Lead Plaintiffs entered into the Stipulation and Agreement of Settlement (the "Stipulation") (Dkt. No. 116-2) with defendants R&G Financial Corporation

("R&G"); Victor J. Galán, Joseph R. Sandoval, Ramón Prats, Benigno R. Fernandez, Gilberto Rivera-Arreaga and Ileana M. Colon-Carlo (the "Individual Defendants"); and PricewaterhouseCoopers LLP ("PwC").  The Stipulation provided for the settlement of the Action against R&G and the Individual Defendants in exchange for payment of $39,000,000 in cash and for settlement of the Action against PwC in exchange for payment of $12,000,000.  Pursuant to the Stipulation, Defendants collectively paid $51,000,000 in cash, which was deposited into an interest-bearing escrow account (the "Settlement Fund").

On May 28, 2008, the Court entered an Order Preliminarily Approving Settlement and Setting Settlement Hearing (the "Preliminary Approval Order") (Dkt. No. 119).  Pursuant to that Order, Lead Counsel retained HR&S to print and mail copies of the Notice of Pendency of Class Action and Proposed Settlements, Settlement Hearing and Motion for Attorney Fees and Reimbursement of Litigation Expenses (the "Notice") and the Proof of Claim and Release form ("Proof of Claim" and, together with the Notice, the "Notice Packet") to potential members of the Class, to publish the Summary Notice, to process the Proofs of Claim submitted, and to effectuate the distribution of the Net Settlement Fund.

On September 16, 2008, the Court held a hearing to consider the proposed settlements and in a Final Judgment dated October 2, 2008 ("Final Judgment") (Dkt. No. 129), the Court approved the Stipulation and the settlements.  The Court also certified a Class, for purposes of settlement, consisting of all persons and entities who purchased or otherwise acquired publicly traded securities of R&G between January 21, 2003 and November 2, 2007, inclusive, and who, based on conduct that was or could have been asserted in the Action, were allegedly injured

thereby. *See* Final Judgment ¶ 4.[2] The time for appeal or appellate review of the Final Judgment has expired and, as a result, the Effective Date of the Stipulation has been achieved and the Net Settlement Fund may be distributed to Class Members under the provisions of the Stipulation and Court-approved Plan of Allocation.

## CLAIMS ADMINISTRATION

HR&S began mailing copies of the Notice Packet to potential Class Members on June 18, 2008. *See* Affidavit of Edward J. Sincavage, CPA Regarding Dissemination of Notice to the Class (Dkt. No. 125-5) at ¶¶ 5-9. By August 19, 2008, HR&S had mailed a total of 27,095 copies of the Notice Packet to members and potential members of the Class. *Id.* ¶ 11. HR&S also caused the Summary Notice to be published in the national edition of *The Wall Street Journal* and released over the *PR Newswire* on July 2, 2008. *Id.* ¶ 12.

Under the terms of the Preliminary Approval Order, all Class Members wishing to participate in the distribution of the Net Settlement Fund were required to submit Proof of Claim forms by mail. Preliminary Approval Order ¶ 19. The original deadline for filing a Proof of Claim was September 26, 2008 and was subsequently extended to October 24, 2008.

As set forth in the accompanying Declaration of Edward J. Sincavage in Support of Motion for Approval of Distribution Plan (the "Sincavage Declaration" or "Sincavage Decl."), HR&S has received and reviewed a total of 5,394 claims. Sincavage Decl. ¶ 10.

---

[2] Excluded from the Class are (a) the Defendants named in the Amended Complaint; (b) members of the immediate families of the Individual Defendants; (c) the subsidiaries and affiliates of the Defendants; (d) any person or entity who is a partner, officer, director, or controlling person of R&G (including any of its subsidiaries or affiliates) or of any Defendant; (e) any entity in which any Defendant has a controlling interest; (f) the Defendants' directors' and officers' liability insurance carriers; and (g) the legal representatives, heirs, successors and assigns of any such excluded party. *See* Final Judgment ¶ 4. Also excluded from the Class are the persons and entities who requested exclusion as listed on Exhibit 1 to the Final Judgment.

Where a submitted claim lacked the required information or documentation to substantiate the claimant's transactions and holdings in the eligible R&G securities during the Class Period, or was otherwise ineligible to participate in the settlements (for example, where the claim showed that the claimant did not purchase eligible R&G securities during the Class Period), HR&S advised the claimant of this fact in writing and gave them a twenty-day opportunity to: (a) correct or supplement their claim with proper documentation or information; or (b) to contest the rejection of their claim. Sincavage Decl. ¶ 6. The rejection letter advised the claimant of his, her or its right to request the Court's review of HR&S's administrative determination rejecting the claim. The letter stated that the claimant could request the Court's review of the rejection of their claim by submitting a statement in writing stating their argument(s) for why the claim should be accepted and providing any and all supporting documentation for the acceptance of the claim. *Id.* Samples of the rejection letters sent to claimants are attached to the Sincavage Declaration as Exhibit A.

HR&S made follow-up phone calls, as necessary, to claimants who requested further clarification on the information submitted to validate their claim. Sincavage Decl. ¶ 6. Whenever a claimant responded to a rejection letter, HR&S reviewed the information and advised the claimant of the results of their response in writing, notifying them that: (a) their response was sufficient to correct or supplement the claim and that HR&S would recommend the claim as valid (in whole or in part); or (b) was insufficient to correct or supplement the claim, and that the claim remained rejected. Sincavage Decl. ¶ 7. Samples of the follow-up notifications sent to claimants who responded to their rejection letters are attached to the Sincavage Declaration as Exhibit B.

Three claimants requested that this Court review the rejection of their claims. HR&S contacted these claimants by telephone and/or first-class mail and was able to resolve all but one of the objections to rejected status. Sincavage Decl. ¶ 8. Claimants Jack and Blanca Goldikener are seeking this Court's review of their claim, which HR&S has recommended for rejection for the reasons set forth in ¶ 8 of the Sincavage Declaration. Lead Counsel have reviewed the disputed claim and concur in HR&S's recommendation.

A total of 160 claims were received with a postmark after October 24, 2008, the extended claims filing deadline, of which 45 were, but for the late submission, otherwise valid. Sincavage Decl. ¶ 10. While these claims were late, they were received while the processing of timely claims was ongoing, and due to the amount of time needed to process the claims received, the processing of these late claims did not delay the completion of the claims administration process or the distribution of the Net Settlement Fund. *Id.* Lead Plaintiffs believe that, when the equities are balanced, it would be unfair to prevent an otherwise valid claim from participating in the Net Settlement Fund solely because it was submitted after the Court-approved claims filing deadline, when it was submitted while claims were still being processed. Accordingly, Lead Plaintiffs request that the Court approve HR&S's administrative determination to accept these late, but otherwise valid claims.[3]

However, in order to facilitate the efficient distribution of the Net Settlement Fund, there must be a final cut-off after which no other claims may be accepted. Accordingly, Lead

---

[3] The Court has discretion to accept Proofs of Claim submitted after the approved filing deadline under the terms of the Plan of Allocation and the Stipulation. *See* Notice ¶ 40; *see also* Stipulation ¶ 24b ("Any Class Member who fails to submit a Claim Form by [the deadline] shall be forever barred from receiving any distribution . . . (unless, by Order of the Court, late-filed Claim Forms are accepted)").

Plaintiffs respectfully request that an Order be entered that no Proof of Claim received after June 1, 2010 be eligible for payment for any reason whatsoever.

Lead Plaintiffs further request that the Court approve HR&S's administrative determinations accepting and rejecting claims as set forth in the Sincavage Declaration.

### FEES AND EXPENSES OF CLAIMS ADMINISTRATOR

In accordance with HR&S's agreement with Lead Counsel to act as the Claims Administrator, HR&S was responsible for, among other things, mailing and publishing notice to the Class, processing the claims, and allocating and distributing the Net Settlement Fund to Authorized Claimants. As set forth in the Sincavage Declaration, HR&S's fees and expenses for its work performed and to be performed on behalf of the Class total $427,234.69. Sincavage Decl. ¶ 15. HR&S has received payments totaling $254,314.67.[4] Accordingly, there is a balance due to HR&S of $179,920.02. *Id.* Lead Plaintiffs respectfully request that the Court approve all of HR&S's fees and expenses.

### DISTRIBUTION PLAN OF THE NET SETTLEMENT FUND

As set forth in the Sincavage Declaration, and consistent with paragraphs 24c, 24d, and 24e of the Stipulation, HR&S has completed the processing of all claims, and all claimants whose claims have been rejected, in whole or in part, have been notified and provided the opportunity to contest such rejection. Accordingly, pursuant to paragraphs 24f and 26 of the Stipulation, Lead Plaintiffs, on notice to Defendants' Counsel, respectfully move for an order approving HR&S's determinations concerning the acceptance and rejection of the claims

---

[4] Under the terms of the Court-approved Stipulation (¶ 16) and the Preliminary Approval Order (¶ 12), Lead Counsel were directed to pay all reasonable costs incurred in identifying and notifying Class Members and administering the settlements without further order of the Court.

submitted by Class Members and approving a plan for distribution of the Net Settlement Fund to Authorized Claimants.

Lead Plaintiffs respectfully request that the Court authorize and direct the distribution of the Net Settlement Fund to those Authorized Claimants listed in Exhibit D, Sections IA and IB of the Sincavage Declaration. Under the Court-approved Plan of Allocation and as set forth in the Sincavage Declaration (¶ 16), HR&S will distribute 100% of the available balance of the Net Settlement Fund, after deducting the payments previously allowed and requested herein, and after payment of any estimated taxes and the costs of preparing appropriate final tax returns and any escrow fees, to the Authorized Claimants who would receive a *pro rata* distribution, as set forth in the Court-approved Plan of Allocation, of at least $10.00 (the "Distribution").

## DISPOSITION OF ANY UNCLAIMED/UNCASHED BALANCE

In order to encourage Authorized Claimants to cash their distribution checks promptly and to avoid or reduce future expenses relating to uncashed checks, Lead Plaintiffs propose that all the distribution checks bear a notation "CASH PROMPTLY. VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED BY [DATE 120 DAYS AFTER ISSUE DATE]." In an effort to have as many Authorized Claimants as possible cash their checks, HR&S will perform extensive follow up with Authorized Claimants who initially fail to cash their Distribution checks. *See* Sincavage Decl. ¶ 16 n.6.

If any funds remain in the Net Settlement Fund after the Distribution because of uncashed Distribution checks or other reasons after these efforts, any balance remaining in the Net Settlement Fund one (1) year after the Distribution shall be redistributed to Authorized Claimants who have cashed their Distribution checks and who would receive at least $10.00 from such redistribution, after payment of any unpaid costs or fees incurred in administering the

Net Settlement Fund for such redistribution. If any funds shall remain in the Net Settlement Fund six (6) months after such redistribution, any remaining balance will be contributed to non-sectarian, not-for-profit 501(c)(3) organization(s) designated by Lead Counsel.

### RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amount allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement. Accordingly, Lead Plaintiffs respectfully request that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration of the Settlement Fund or the Net Settlement Fund from any and all claims arising out of the such involvement, and bar all Class Members, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Lead Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund beyond the amount allocated to Authorized Claimants.

### CONCLUSION

For the foregoing reasons, Lead Plaintiffs' Motion for Approval of Distribution Plan should be approved, and the proposed Order Approving Distribution Plan should be entered.

Dated: June 7, 2010                     Respectfully submitted,

                                        By: /s/ Steven B. Singer
                                            Max W. Berger (MB-5010)
                                            Steven B. Singer (SS-5212)
                                            BERNSTEIN LITOWITZ BERGER &
                                                GROSSMANN LLP
                                            1285 Avenue of the Americas
                                            New York, NY 10019
                                            Tel.: (212) 554-1400
                                            Fax: (212) 554-1444

                                        By: /s/ M. Richard Komins
                                            Leonard Barrack
                                            M. Richard Komins (admitted pro hac vice)
                                            Jeffrey A. Barrack
                                            Lisa M. Lamb
                                            BARRACK RODOS & BACINE
                                            3300 Two Commerce Square
                                            2001 Market Street
                                            Philadelphia, PA 19103
                                            Tel.: (215) 963-0600
                                            Fax: (215) 963-0838

                                        *Lead Counsel for Lead Plaintiffs and the Class*

#455840.1