UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――X
IN RE R&G FINANCIAL CORPORATION  :
SECURITIES LITIGATION            :          **ECF CASE**
―――――――――――――――――――――X
This Document relates to:        :          MASTER FILE NO.
All Actions.                     :          05 Civ. 4186 (JES)
―――――――――――――――――――――X

### DECLARATION OF EDWARD J. SINCAVAGE IN SUPPORT OF MOTION FOR APPROVAL OF DISTRIBUTION PLAN

EDWARD J. SINCAVAGE, hereby declares and states as follows:

1. I am a partner in the Certified Public Accounting firm of Heffler, Radetich & Saitta L.L.P. ("HR&S" or "we"), the main offices of which are at Suite 1700, 1515 Market Street, Philadelphia, Pennsylvania 19102. I am over 21 years of age and not a party to the above-captioned action (the "Action"). I have personal knowledge of the matters set forth in this declaration and, if called upon as a witness, I could and would competently testify to these matters under penalty of perjury.

2. Pursuant to a Stipulation and Agreement of Settlement dated May 21, 2008 (the "Stipulation") (Dkt. No. 116-2), Lead Plaintiffs settled this Action with Defendants for $51,000,000. The Court approved the Stipulation and the settlements in its Final Judgment dated October 2, 2008 (Dkt. No. 129).

3. In its May 28, 2008 Order Preliminarily Approving Settlement and Setting Settlement Hearing (the "Preliminary Approval Order") (Dkt. No. 119), the Court approved the retention of HR&S as Claims Administrator. In its capacity as Claims Administrator, HR&S was authorized: to mail the Notice of Pendency of Class Action and Proposed Settlements, Settlement Hearing and

Motion for Attorney Fees and Reimbursement of Litigation Expenses, dated June 18, 2008 (the "Notice"), along with the Proof of Claim and Release (the "Proof of Claim" and, together with the Notice, the "Notice Packet") to potential Class Members; to review and calculate the Proofs of Claim that were filed; and to assist Lead Counsel and the Court in the administration of the settlements.

## THE CLAIMS ADMINISTRATION PROCESS

4.       Under the terms of the Preliminary Approval Order, Class Members were required to submit a Proof of Claim form in order to be eligible obtain a share of the Net Settlement Fund. The original deadline for filing a Proof of Claim was September 26, 2008 and was subsequently extended to October 24, 2008.

5.       A summary of the procedures followed by my firm in receiving and processing the claims is set forth below. HR&S trained staff in the specifics of this project and developed programs for entry of Class Member identification and transaction information. On a daily basis, HR&S received all correspondence and claims submitted in this matter from Post Office Box 1200, Philadelphia, PA 19105-1200. Envelopes received from the Post Office Box were opened and sorted into correspondence, such as requests for claim forms, and actual Proof of Claim forms. The correspondence received was reviewed and appropriate responses given. The claim forms were opened and all submitted documentation was stapled to the claim form, and the claim form was assigned a claim number. The information from each claim form, including the name, address, Employer I.D. or Social Security Number of the claimant, the claimant's holdings as of January 20, 2003 and February 1, 2008, and the transactions listed on the claim form, were then entered into a computerized database. The documentation provided in support of each claim by the claimant was reviewed to ascertain whether the claimant had in fact purchased the eligible securities of R&G Financial Corporation ("R&G") during the Class Period of January 21, 2003 through November 2,

2

2007, inclusive. Claims were then reviewed to ensure that they were not from any person who was excluded from the Class -- specifically, any of the Defendants named in the Amended Complaint; members of the immediate families of the Individual Defendants; the subsidiaries and affiliates of the Defendants; any person or entity who is a partner, officer, director, or controlling person of R&G (including any of its subsidiaries or affiliates) or of any Defendant; any entity in which any Defendant has a controlling interest; the Defendants' directors' and officers' liability insurance carriers; and the legal representatives, heirs, successors and assigns of any such excluded party -- to the extent that the identities of such persons or entities were known to us through the list of Defendants. Claims were also reviewed to ensure that they were not from any person or entity who requested exclusion from the Class, as listed in Exhibit 1 to the Final Judgment.

6.   Where a submitted claim lacked the required information or documentation to substantiate the claimant's transactions and holdings in the eligible R&G securities during the Class Period, or was otherwise ineligible to participate in the Settlement (for example, where the claim showed that the claimant did not purchase eligible R&G securities during the Class Period), we advised the claimant of this fact in writing and gave them a twenty-day opportunity to: (a) correct or supplement the claim with proper documentation or information; or (b) to contest the rejection of the claim. The rejection letter, samples of which are attached hereto as Exhibit A, advised the claimant of his, her or its right to request the Court's review of HR&S's administrative determination rejecting the claim. The letter stated that the claimant could request the Court's review of the rejection of the claim by submitting a statement in writing stating the argument(s) for why the claim should be accepted and provide any and all supporting documentation for the acceptance of the claim. Follow-up phone calls were made, as necessary, to claimants who requested further clarification on the information submitted to validate their claim.

7. Whenever a claimant responded to a rejection letter, we reviewed the information and advised the claimant in writing of the results of our review of his, her or its response. HR&S notified these claimants that: (a) their response was sufficient to correct or supplement their claim and that we would recommend the claim as valid (in whole or in part); or (b) was insufficient to correct or supplement their claim, and that the claim remained rejected. Attached hereto as Exhibit B are copies of the follow-up notifications sent to claimants who responded to their rejection letter.

8. Only three claimants requested that this Court review the rejection of their claims. HR&S contacted these claimants by telephone and/or first-class mail and was able to resolve all but one of the objections to rejected status. The following is a summary of the claim that has an outstanding request for Court review.

<u>Claim No. 10022 – Jack and Blanca Goldikener</u>. The Goldikeners' claim reflects four transactions:[1]

i. 8/26/1998 purchase of 2,000 shares (documentation submitted with claim form reflects that these were shares of R&G Finl Corp Perp Pfd Ser A% ("Series A Preferred"));

ii. 3/31/2004 purchase of 500 shares (documentation submitted with claim form reflects that this was a purchase of $50,000 on 3/26/04 of Puerto Rico Consv Tr Fd Secd NT 5.900% 04/15/34 REG Dtd 3/31/04 Solicited Order YLD 5.900 to Mat. ("5.9% PR Consv. Trust Notes");

iii. 11/30/2004 purchase of 1,000 shares (documentation submitted with claim form reflects that this was a purchase of $100,000 on 11/26/04 of Puerto Rico Consv Tr Fund Secured Notes 6.000% 12/15/34 REG Dtd 11/30/04 CLB Solicited Order YLD 6.000 to Mat ("6.0% PR Consv. Trust Notes")); and

iv. 4/8/05 purchase of 1,080 shares with no price listed (documentation submitted with claim form reflects that this was a "receipt into ... account" on 4/8/05 of R&G Finl Corp Perp PFD Sec Ser C 7.60% ("Series C Preferred") with no price indicated.

---

[1] The claim form and all related documentation are attached hereto as Exhibit C. For ease of reference we have numbered the pages sequentially. In the interests of the Goldikeners' privacy we have redacted the documents in Exhibit C to remove personal information such as addresses, account numbers or Social Security Numbers, and all transaction information not related to their claim.

Under the terms of the Court-approved Plan of Allocation, the only securities eligible for consideration in calculating a claimant's Loss Amounts are the publicly traded securities of R&G that were purchased or otherwise acquired between January 21, 2003 and November 2, 2007, inclusive (the "Class Period"). Additionally, claimants were required to submit documentation demonstrating the dates of purchase or acquisition of the R&G securities during the Class Period and the cost to the claimant for such purchase or acquisition.

The Goldikeners' claim was rejected in the entirety because: (i) the purchase of the Series A Preferred occurred prior to the start of the Class Period; (ii) the 5.9% PR Consv. Trust Notes and the 6.0% PR Consv. Trust Notes (the "PR Consv. Trust Notes") are not securities of R&G; and (iii) the documentation submitted with respect to the Series C Preferred did not substantiate a purchase or acquisition date or the price paid for the security. The Goldikeners were sent notice of the rejection of their entire claim in which they were advised that they could request a Court review of the determination and, if they did so, they should submit a statement of the basis of their dispute and any additional documentation that they may have in support of their position. The notice further advised them that the response would be reviewed and if, in the opinion of HR&S, it did not cure the deficiencies, the claim would be presented to the Court. (A copy of the Notice of Rejection is included in Exhibit C at pp. 10-12.) Mr. Goldikener requested Court review and, in support of that request, he submitted additional documentation. (*See* Exhibit C, at pp. 14-36 and 39-152.) HR&S reviewed the documentation and has had several telephonic and email communications with Mr. Goldikener with respect to his submissions. (*See* Exhibit C at pp. 13 and 37-38.) Nothing in the supplemental submissions alters HR&S's original determination that the claim should be rejected in the entirety.

With respect to the purchase of the Series A Preferred, there is no dispute as to the date of

purchase; since it predates the start of the Class Period, it is a fatal deficiency that cannot be cured. This was explained to Mr. Goldikener and he apparently accepts the disqualification of this transaction. (*See* Exhibit C at p. 39.)  With respect to the purchases of the PR Consv. Trust Notes, which did occur during the Class Period, Mr. Goldikener does not dispute that he purchased PR Consv. Trust Notes, which is clearly set forth in the documentation that was originally submitted in support of the claim, as well as in his supplemental submissions. (*See* Exhibit C at pp. 7-8, 19-20, 23, 26-27, and 31-32.)  Rather, it is his position that the notes are "securities of R&G" and thus should be eligible.  However, the offering documents for the Puerto Rico Conservation Trust Fund Notes do not support Mr. Goldikener's position.  Thus, for example, the cover page of the offering material for the Puerto Rico Conservation Trust Fund 6.00% Secured Notes due 2034—Price 100% (notes that Mr. Goldikener purchased and included in his claim form) which Mr. Goldikener forwarded to HR&S as part of his May 24, 2010 supplemental submission, states in the fifth bullet point:  "The Notes are obligations solely of Conversation Trust and do not constitute a debt of . . . R&G Financial or any of its affiliates . . . ." (*See* Exhibit C at p. 33; *see also id.* at pp. 253 and 255.) Similarly, the offering materials for another issue of notes by the Puerto Rico Conservation Trust that Mr. Goldikener forwarded to HR&S has the identical language on the cover page and on page 1 it states that: the issuer of the notes is the Puerto Rico Conservation Trust Fund, a Puerto Rico charitable trust, and it reiterates that the "Notes are limited obligations of Conservation Trust . . . [and] do not constitute an indebtedness of . . . R&G Financial or any of its affiliates". (*See* Exhibit C at pp. 40 and 42.)[2]  The documents are clear on their face; the PR Consv. Trust Notes are not

---

[2] These offering materials were apparently sent to Mr. Goldikener by Lead Counsel in response to an inquiry by him about the case and how to submit a claim.  They do not relate to the Notes on which Mr. Goldikener bases his claim. (*See* Exhibit C at p. 152.)

6

securities of R&G and, thus, cannot be considered for purposes of calculating the Goldikeners' claim.[3]

Finally, with respect to the purchase of the Series C Preferred, again Mr. Goldikener's additional submission does not cure the deficiencies in the claim. Mr. Goldikener's original documentary support with respect to this security merely reflected a transfer into the Goldikeners' R&G Investments Corporation account on 4/8/05. Nothing in the document reflects when the securities were actually purchased or otherwise acquired nor does it reflect any purchase price. (*See* Exhibit C at p. 6.) On May 17, 2010, Mr. Goldikener submitted another filled-in transaction sheet from the claim form in which, as to the acquisition of the 1080 shares of the Series C Preferred, the "purchase date" now appears as 5/2/03 (the original claim form had 4/8/05) and a "purchase price" of $25 per share has been filled in. (See Exhibit C at p. 17.) However, the additional supporting documentation submitted does not cure the previously noted deficiencies. Mr. Goldikener submitted a "Certificate History Inquiry" from AMSTOCK dated 5/2/03. Again, however, no date of purchase or acquisition or purchase price is reflected. (S*ee* Exhibit C at pp. 21 and 36.)[4] The other documentary "support" that Mr. Goldikener submitted was an account statement from Charles Schwab for the period April 1-30, 2010 that only shows that the shares were still held as of April 30, 2010; that does not address the deficiency. (*See* Exhibit C at p. 24.) Mr. Goldikener has not been

---

[3] Mr. Goldikener did not provide a copy of the offering materials relating to the other issue of Puerto Rico Conservation Notes that he purchased, *i.e.*, the 5.90% Secured Notes due 2034 purchased on 3/26/04. HR&S obtained a copy of the offering materials for those notes and, like the other documents, it too states that the Notes are obligations solely of the Conservation Trust, that they were issued by the Conservation Trust, and they do not constitute an indebtedness of R&G financial or any of its affiliates. (*See* Exhibit C at pp. 153 and 155.)

[4] There is a line entry for "ISSUE DATA" under which "051601" appears. If, in fact, May 16, 2001 is the date of the issuance of the certificates, it would mean the shares were purchased before the start of the Class Period, and thus, are ineligible.

able to supply any documentary support demonstrating that the Series C Preferred shares were purchased or otherwise acquired during the Class Period or the purchase price and, as such, these shares cannot form the basis of a claim. On May 27, 2010, Mr. Goldikener sent HR&S an email again setting forth his position as to why his claim should be allowed, at least in part. (*See* Exhibit C at p. 39.) However, because the Goldikeners have no eligible supported purchases or acquisitions of R&G securities during the Class Period, it remains HR&S's recommendation that the claim be rejected.

9. Claims which were properly submitted and supported with adequate documentary evidence were calculated on the basis of the "Recognized Loss" formula set forth in the Plan of Allocation previously approved by the Court.

10. In total, 5,394 Proof of Claims forms were received, of which 160 were postmarked later than October 24, 2008, the extended deadline for filing Proofs of Claim, and received on or before June 1, 2010. All such late-filed claims were reviewed by HR&S; none were rejected solely on the basis that they were submitted late. Of the 160 late-filed claims, 45 were determined to be otherwise valid. We believe that no substantial delay in the processing or distribution of the Net Settlement Fund resulted from the processing of these late-filed claims. Accordingly, we respectfully request that the Court approve our administrative determination to accept the late but otherwise valid claims. We have also consulted with Lead Counsel who advised that they concur in our recommendation regarding these late but otherwise valid claims. These claims are included in the list of accepted claimants. A final report on the claims submitted is attached as Exhibit D.

11. Of the 5,394 total claims received, 3,245 have been accepted (which include the 45 late but otherwise valid claims) with a total Recognized Loss amount of $165,673,939.18. *See* Exhibit D, Sections IA and IB, Accepted Timely Claims and Accepted Late But Otherwise Valid

Claims, respectively. We advised these claimants of the calculated loss on their claim and that we would recommend the claim as valid (in whole or in part), and gave them a twenty-day opportunity to contest the loss calculation of their claim. Attached hereto as Exhibit E is a copy of the letter sent to accepted claimants notifying them of their calculated Recognized Loss.

12. A total of 2,149 claims have been identified as ineligible. *See* Exhibit D, Section II, Rejected Claims. The reasons for the rejections include: claimant filed a blank Proof of Claim Form; claimant did not purchase eligible R&G securities during the Class Period; the claim is a duplicate claim; claimant did not sustain a Recognized Loss from the purchase and sale of the eligible securities during the Class Period; and claimant did not provide documentation to adequately support their claimed transactions.

13. Exhibit D, as noted above is a "Claimant Listing as of June 3, 2010." The first portions of the Claimant Listing (Sections IA and IB) list all the accepted claims in claim number order and shows the Recognized Loss amount for each claim. The next portion of the Claimant Listing (Section II) lists all the rejected claims in claim number order and shows the reason why the claim was rejected.

14. HR&S has devoted all time necessary to do what it believes is a thorough job of processing the claims and to protect the interests of each Class Member submitting a claim. No claims were rejected without being formally reviewed, and we believe that adequate time was spent communicating with Class Members and suggesting appropriate ways they could document their claims and participate in the settlement. Telephone calls and written letters from claimants to HR&S were courteously handled. I believe that Class Members were assisted to the fullest extent reasonably possible and in a manner consistent with HR&S's experience handling other class action claims administrations. The professional attitude and work product of HR&S was, I believe, of the

highest quality and consistent with our professional standards in administering scores of other class action cases. However, we may continue to receive inquiries or information submitted by claimants. We recommend that if we receive adjustments to claims that affect their identity, address, status, loss, or amount of distribution prior to distribution of the Net Settlement Fund, that we update our file with the new information. We will report the updated totals to Lead Counsel for the Class prior to distribution.

### FEES AND DISBURSEMENTS

15.   HR&S was directed to mail copies of the Notice Packet to Class Members, to process all claims submitted by Class Members in this action, and to distribute the Net Settlement Fund to Authorized Claimants. HR&S undertook this work with the understanding and expectation that it would receive payment of the firm's fees and be reimbursed for the expenses it incurred. Our actual fees and expenses incurred and to be incurred amount to $427,234.69, consisting of $338,719.31 in fees and $88,515.38 in expenses, as shown on the invoices annexed hereto as Exhibit F. HR&S has received payments totaling $254,314.67. The balance currently due is $172,920.02, consisting of $163,503.75 in fees and $9,416.27 in expenses.

### DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND

16.   Should the Court concur with HR&S's determinations concerning the provisionally accepted and rejected claims, HR&S recommends the following distribution plan:

    a.   HR&S will distribute 100% of the available balance of the Net Settlement Fund, after deducting the payments previously allowed and requested herein, and after payment of any estimated taxes and the costs of preparing appropriate tax returns, to the Authorized Claimants who would receive at least $10.00 based on their Recognized Loss in

comparison to the total Recognized Loss of all Authorized Claimants (the "Distribution").[5] Specifically, HR&S staff will calculate the initial *pro rata* distribution based on allocating the Net Settlement Fund to all claims with a Recognized Loss; remove claims where the initial *pro rata* allocation is less than $10; and recalculate the *pro rata* distribution amounts from the Net Settlement Fund to the remaining claimants who will receive a payment of at least $10.00;

b.  HR&S will prepare checks and check registers, and mail checks by pre-paid, first class mail, issue replacement checks upon request by payees, and otherwise continue to administer the settlement and respond to inquiries about claim calculations and checks;

c.  In order to encourage Authorized Claimants to cash their Distribution checks promptly, and to avoid or reduce future expenses relating to unpaid Distribution checks, all Distribution checks will bear a notation "CASH PROMPTLY. VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED BY [DATE 120 DAYS AFTER ISSUE DATE]";[6]

---

[5]  The Court-Approved Plan of Allocation provides that a payment to any Authorized Claimant of less than $10 in total will not be included in the calculation and will not be distributed.

[6]  In an effort to have as many Authorized Claimants as possible cash their checks, HR&S will perform extensive follow-up with those Authorized Claimants whose checks are initially uncashed, either because they are returned to us as undeliverable or because the Authorized Claimant simply did not cash the check after a period of time elapses. For Authorized Claimants whose checks are returned as undeliverable, HR&S will attempt to contact the Authorized Claimant via phone or email or send the record to a credit bureau or similar type service for address updates and update the address in order to reissue the check. For Authorized Claimants whose distributions are not returned but who simply do not cash their checks, HR&S will attempt to contact the Authorized Claimant via phone, letter or email and offer the opportunity to reissue the check after the initial void date has passed. Authorized Claimants that have failed to cash their checks by the initial void date will be informed that, if they do not cash their reissued checks within sixty (60) days from the mail date, the payment check will lapse, their entitlement to recovery will be irrevocably forfeited and the funds will be available for re-allocation to other Authorized Claimants. In the event an Authorized Claimant loses or damages his, her or its check, or otherwise requires a new check, HR&S will issue replacements only after a stop payment has been placed and is in effect. Distribution re-issues will

  d. Authorized Claimants who do not cash their Distribution checks within the time allotted will irrevocably forfeit all recovery from the settlements. The funds allocated to all such stale-dated checks will be available in the re-distribution to other Authorized Claimants;

  e. Consistent with the Court-approved Plan of Allocation, if any funds remain in the Net Settlement Fund after the Distribution because of uncashed distributions or otherwise, then, after HR&S has made reasonable and diligent efforts to have Authorized Claimants cash their Distribution checks (which efforts shall consist of the extensive follow-up efforts described in footnote 6 above), any balance remaining in the Net Settlement Fund one (1) year after the Distribution will be redistributed to Authorized Claimants who have cashed their Distribution checks and who would receive at least $10.00 from such redistribution, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund for such redistribution. If any funds shall remain in the Net Settlement Fund six (6) months after such redistribution, then such balance will be contributed to non-sectarian, not-for-profit 501(c)(3) organization(s) designated by Lead Counsel;

  f. In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amount allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Proofs of Claim submitted herein, or otherwise involved in the administration or taxation of the

---

be undertaken only upon written instructions, including emails, from the Authorized Claimant, and provided that the Authorized Claimant returns the first check where appropriate. If a distribution is deemed lost, HR&S will place a stop payment on the initial payment check prior to re-issuing a payment and reissue the check after the stop payment is in effect.

Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement. Accordingly, HR&S agrees with Lead Plaintiffs' request that the Court bar any further claims against the Net Settlement Fund beyond the amount allocated to Authorized Claimants, and that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Proofs of Claim submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, from any and all claims arising out of such involvement;

  g. No further Proofs of Claims may be accepted for any reason after June 1, 2010; and

  h. Unless otherwise ordered by the Court, one year after the final distribution of the Net Settlement Fund, HR&S will destroy the paper copies of the Proofs of Claim and all supporting documentation, and three years after the final distribution HR&S will destroy electronic copies of the same.

## **CONCLUSION**

17. HR&S respectfully requests that the Court enter an Order approving our administrative determinations accepting and rejecting the Proofs of Claim submitted herein received on or before June 1, 2010 and approving the proposed distribution plan. HR&S further respectfully submits that the balance of its fees and expenses, as reflected on the invoices attached hereto as Exhibit F, should be approved for payment from the Settlement Fund.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on June 4, 2010.

*Edward J. Sincavage*
EDWARD J. SINCAVAGE, C.P.A.